UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH LASHOUN WILSON,

       Petitioner,

                                        CASE NO. 2:06-CV-12409
v.                                  JUDGE NANCY G. EDMUNDS
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS K. BELL,

       Respondent.[1]
       _____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              a.  Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              b.  Failure to Call Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
              c.  Failure to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     F.    *Sentencing Claim (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

---

[1]By Order entered this date, Thomas K. Bell has been substituted for Jan Trombley as the proper respondent in this action.

I.       RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.      REPORT:

A.      *Procedural History*

       1.      Petitioner Keith Lashoun Wilson is a state prisoner, currently confined at the Parr Highway Correctional Facility in Adrian, Michigan.

       2.      On August 4, 2003, petitioner was convicted of two counts of third degree criminal sexual misconduct, MICH. COMP. LAWS § 750.520d(1)(a), following a jury trial in the Wayne County Circuit Court. On August 21, 2003, he was sentenced to a term of 9-15 years' imprisonment.

       3.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

>  I.   DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S FAILURE TO INVESTIGATE, PRESENT A DEFENSE AND CALL WITNESSES, AND HIS FAILURE TO MAKE OBJECTIONS.
>
>  II.  DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL, WHERE IN THIS TRIAL, WHICH WAS A CREDIBILITY CONTEST, THE PROSECUTOR IMPROPERLY BOLSTERED THE KEY PROSECUTION WITNESS' TESTIMONY BY VOUCHING FOR THEIR CREDIBILITY.
>
>  III. DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE SENTENCING GUIDELINES RANGE WAS ENHANCED BY THE SCORING OF OFFENSE VARIABLE 10 ON THE BASIS OF FACTS NOT PROVEN TO A JURY BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.

The court of appeals denied petitioner's delayed application for leave to appeal for "lack of merit

in the grounds presented." *People v. Wilson*, No. 257718 (Mich. Ct. App. Jan. 20. 2005).

   4.  Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Wilson*, 474 Mich. 879, 704 N.W.2d 76 (2006).

   5.  Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 30, 2006. As grounds for the writ of habeas corpus, he raises the three claims that he raised in his state court appeal.

   6.  Respondent filed his answer on December 11, 2006. He contends that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

   7.  Petitioner filed a reply to respondent's answer on January 9, 2007.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in his delayed application for leave to appeal in the Michigan Court of Appeals:

> At trial, it was alleged that Defendant had sexual intercourse with his former fiancé's daughter, Sherika Montgomery, on two occasions between December of 2002 and March of 2003. Ms. Montgomery testified that she never told her mother about this until a fight occurred between her stepbrother and Defendant on April 3, 2003. Ms. Montgomery admitted that she did not like Defendant and that she and her stepbrother talked about this a lot. Ms. Montgomery denied that she told the police that the allegations were false on the night of the fight.
>  Ms. Montgomery's step brother, Bryant Williams, testified that Ms. Montgomery told her about the sexual acts, but he did not tell anyone until the fight between himself and defendant. Bryant testified that he got in a fight with Defendant on April 3, 2003. He told Defendant that he wanted to move out and live with his Dad and Defendant hit him. Ms. Montgomery called the police, but he claimed that the police did not ask him or Ms. Montgomery anything and he and Ms. Montgomery did not tell the police anything on that night. Bryant admitted that he did not like Defendant.
>  Defendant turned down a plea agreement for the low end of the guidelines

> range of 19-58 months and testified in his own behalf. Mr. Wilson testified that he had been together with Ms. Montgomery's mother for 5 years and that they had two children. Defendant testified that on April 3, 2003, he was outside barbequing when his niece told him that Bryant had hit his toddler aged son in the eye. He confronted Bryant and hit him. Bryant told him that he hated him and wanted to go live with his father. Bryant then said to Defendant that he was going to tell Defendant's fiancé that Defendant had sex with her daughter. Fifteen minutes later the police arrived and told Bryant that he was wasting their time. Bryant then said that Defendant was having sex with Ms. Montgomery. Defendant testified that when the police asked Ms. Montgomery whether this was true she said no.
> 
> Significantly, Defendant testified that Ms. Montgomery was having a relationship with her "God brother", Jehmetrius Williams (no relation to Bryant Williams), a seventeen year old boy. In March of 2003, he walked in on them and both had their pants unzipped. When Defendant punished Ms. Montgomery for this she told him that she hated him and wished that he had never met her mother.
> 
> Defendant testified that he never had sex with Ms. Montgomery.
> 
> Jehmetrius Williams testified that Defendant told him that he had sex with Ms. Montgomery, but that he never told anyone about this. He admitted that he was not afraid of Defendant or Ms. Montgomery's mother and that he had no reason to not tell the police about what Defendant allegedly told him. Mr. J. Williams also testified that the police did not question Ms. Montgomery on the night of the fight in April.
> 
> The police officers who came to the scene of the fight in April were never called at trial.
> . . . .
> At the hearing on Defendant's motion for new trial the court indicated that there was no record evidence that the police officers who arrived on the scene could have testified to the allegations of defendant. The court also stated that there was no evidence that an investigation into the background of the complaining witness and Bryant Williams would have been anything other than a fishing expedition. Defendant then made an oral motion for appointment of an investigator at county expense and this motion was denied.

Def.-Appellant's Delayed App. for Leave to Appeal, in *People v. Wilson*, No. 257781 (Mich. Ct. App.), at 5-7.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Ineffective Assistance of Counsel (Claim I)*

Petitioner first claims that he was denied his Sixth Amendment right to the effective

assistance of counsel. Specifically, he contends that counsel was ineffective failing to: (1) investigate; (2) present a defense and call witnesses; and (3) make objections. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2. *Analysis*

*a. Failure to Investigate*

Petitioner first contends that counsel was ineffective for failing to investigate the background of the victim and her stepbrother to discover if there was anything which would damage their credibility. At the hearing on petitioner's motion for new trial, the trial court rejected petitioner's request for an investigator and the underlying claim, concluding that petitioner had provided nothing to believe that any investigation would be fruitful beyond speculation that something might be uncovered. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

To be entitled to habeas relief on this claim, petitioner "has the burden of supplying sufficiently precise information regarding the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information would have produced a different result." *United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir. 2002); *see also*, *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002). Here, petitioner presents no claim regarding what information a further investigation of the witnesses' background would have uncovered; he merely speculates that something might have been uncovered which would have damaged their credibility. Such speculation is insufficient to establish that counsel was deficient or that petitioner was prejudiced by counsel's failure to investigate.

Nor is such speculation sufficient to entitle petitioner to an evidentiary hearing with respect to this claim. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of

the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Here, regardless of whether a hearing is permitted under § 2254(e)(2), the Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).

Here, an evidentiary hearing does not have the potential to advance petitioner's claim. Although petitioner claims he is entitled to an evidentiary hearing to develop this claim, he does not suggest any particular evidence that an evidentiary hearing would uncover that would support his claims. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996). Petitioner's "'bald

9

assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Accordingly, the Court should conclude that petitioner is entitled to neither an evidentiary hearing nor habeas relief with respect to his claim that counsel was ineffective for failing to properly investigate the case.

### b. Failure to Call Witnesses

Petitioner also contends that counsel was ineffective for failing to call as witnesses the two police officers who responded to the April 2003 fight. Petitioner contends that these witnesses could have corroborated his testimony that the victim told the officers that her stepbrother's allegation against petitioner was not true. Again, however, there is nothing in the record to suggest that the officers could or would have testified as petitioner claims, nor was petitioner precluded from obtaining such evidence in the absence of an investigator. It would have been a simple matter for appellate counsel, in pursuing petitioner's motion for new trial, to obtain affidavits from the officers. In the absence of any basis upon which to believe the officers would have corroborated petitioner's version of events, petitioner has failed to establish that counsel was deficient or that he was prejudiced by counsel's failure to call the responding officers as witnesses.

### c. Failure to Object

Finally, petitioner contends that his counsel was ineffective for failing to object to prosecutorial misconduct at trial. As explained in the following section, petitioner's underlying prosecutorial misconduct claim is without merit, and thus any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir.

1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993); *White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).

E.     *Prosecutorial Misconduct (Claim II)*

Petitioner next contends that the prosecutor committed misconduct by vouching for the credibility of the prosecution's witnesses during closing argument. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

2.   *Analysis*

Petitioner isolates two comments by the prosecutor which he claims denied him a fair trial. First, the prosecutor stated during rebuttal that "this happened to her." Trial Tr., Vol. III, at 32. Second, also during rebuttal, the prosecutor stated "they didn't make this up." *Id*. at 35. Petitioner contends that these statements constituted impermissible vouching for the credibility of the victim and her stepbrother. The Court should disagree.

Improper vouching occurs only either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2]

At the outset, it should be noted that the prosecutor's comments were a fair response to the attacks on the prosecution's case made by defense counsel. The entire defense was premised on the theory that the victim and her stepbrother had made up this allegation because they did not like petitioner. As the Supreme Court has explained, an important factor in evaluating the permissibility of prosecutorial comments is whether the prosecutor's statements were "invited by or was responsive" to the defense. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986). More importantly, when viewed in context it is clear that the prosecutor's comments did not express a personal belief in the witnesses' credibility (or lack thereof), or imply that the prosecutor had special

---

[2]Some cases refer to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

knowledge of facts not before the jury. The statements isolated by petitioner occurred in the context of a broad discussion of the implausibility of petitioner's theory given the sophistication of the lies which would have been necessary for the two minors to have concocted had they not been telling the truth. *See* Trial Tr., Vol. III, at 31-34. Thus, the prosecutor did not express a personal belief in the witnesses' veracity or suggest that facts outside the record supported their testimony, but merely argued to the jury that the evidence and common sense should lead it to conclude that the prosecution's witnesses were credible and that petitioner was not. The prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence. As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner. *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").

Further, "it is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence." *U.S. v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000) (internal quotation omitted). Thus, the prosecutor was permitted to urge the jury to use its common sense in evaluating

the credibility of the witnesses' testimony. *See United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F. Supp. 356, 366 (D. Del. 1988). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these prosecutorial misconduct claims.

F.   *Sentencing Claim (Claim III)*

Finally, petitioner contends that his sentence violates the Supreme Court's *Apprendi* line of cases. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional

14

under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v.*

15

*Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an

16

aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Montes v. Trombley*, No. 06-14539, 2008 WL 4613062, at *5 (E.D. Mich. Oct. 14, 2008) (Luddington, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

17

G.  *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        s/Paul J. Komives

Dated: 10/24/08

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on October 24, 2008.
>
> s/Eddrey Butts
> Case Manager